### STATE v. LEVI HARGRAVE.

*False Pretence— Obtaining Property from A with Intent to Defraud B.*

1. The prisoner being entitled to a claim against the county, for witness fees, assigned it to C.; the claim was allowed by the commissioners, who directed the Register of Deeds to issue a county order for it. The prisoner falsely stated to the Register's clerk that he had not assigned his claim, and that he was entitled to the county order, and by means of such false statements obtained the order. The prisoner being indicted for obtaining property under false pretences, it was proper to charge the jury: That if they believed, beyond a reasonable doubt, that the prisoner fraudulently, designedly, knowingly and falsely represented to the Register's clerk, whether the representations were by words or acts, that he had not assigned his claim to C., and that he was the owner of the order, when, in truth and in fact, he was not, and that by reason thereof he obtained the order from such clerk, he was guilty.

2. A county is discharged from liability for a witness' fees by paying them to the person who appears to be entitled thereto, from the witness ticket and bill of costs made out by the Clerk of the Court, although the Clerk of the Court had notice that the claim had been assigned by the witness to another person, C. *Therefore*, upon an indictment against the witness for obtaining the county order, issued in payment of his fees, by false pretences, it was proper to charge in the bill that the act was done with intent to defraud C.

3. An indictment charging that the prisoner obtained goods, &c., from A, by reason of false pretences made to A, with intent to defraud B. will be sustained under our statute, although the relation of principal and agent did not exist between A and B.

CRIMINAL ACTION, tried before *Philips, J.,* at December Term, 1888, of DAVIDSON Superior Court.

The bill of indictment is set out in the opinion of the Court.

A. L. Clodfelter, a witness for the State, testified that the defendant assigned to him in writing the claim which he

(defendant) had in the case of the State *v.* Mebane; that witness let defendant have goods to the value of $2.15, in consideration of such assignment, and filed the assignment with the Clerk of the Superior Court. It was shown that the assignment was afterwards lost.

R. M. Leonard corroborated the testimony of Clodfelter.

The Deputy Superior Court Clerk testified that the assignment above mentioned was presented to him, and he entered on the judgment docket that the claim of defendant for services as a witness in the State *v.* Mebane was to the use of Clodfelter; that Mebane was released under the insolvent debtor's act, and that one-half of the claim of defendant was allowed by the County Commissioners.

It was shown that W. N. Kinney was the deputy and agent of the Register of Deeds, authorized to act for him in settling claims against the county.

W. N. Kinney testified that he, acting for the Register of Deeds, delivered the order set out in the bill of indictment to the defendant. "The bill of costs in State *v.* Mebane, (brought) to our office and allowed by Commissioners, did not show Levi Hargrave's claim marked to use of Clodfelter. I had never seen the assignment. Clodfelter came to me the day before I gave the order to defendant, and asked me if I had his claim in the Mebane case. I told him there was no claim there for him. Asked him if he had an assignment. He had none. I asked defendant in my office the next day if he had assigned his order to Clodfelter, and he said he had not, and that it was his claim. I gave him the order, and he gave me the receipt." (Defendant's receipt for the order was shown in evidence.)

On cross-examination, witness said: "I recollect calling defendant's attention to the fact that Clodfelter had called and said he had a claim in the Mebane case, and called for it. I told him the order was not made in the name of Clodfelter. The claim in the bill of cost sent from Clerk's office

was not to the use of Clodfelter. When the bill of costs sent from Clerk's office says to the use of anyone, I make out the order to the use of that one. It is the custom, when a claim is assigned, to have it marked to the use of the one to whom it is assigned. * * * I gave the defendant the order because it was made out to him, and took his receipt."

The County Treasurer testified that he had paid the order described in the indictment to the defendant.

The defendant demurred to the evidence, and asked the following instructions to the jury, which were refused:

"1. (This prayer is copied in the opinion.)

"2. (This prayer is given, in substance, in the opinion.)

"3. (This is copied in the opinion.)

"4. If the jury believe that Kinney issued the order produced in evidence, to the defendant, for the reason that the bill of costs sent to the Register's office from the Clerk Superior Court's office did not show any assignment to the use of Clodfelter, and that the order was accordingly made out in the name of defendant, they must acquit defendant.

"5. If the jury believe that, at the time Kinney issued the order to the defendant, he knew or had been notified by Clodfelter that the defendant assigned his right to the witness ticket, mentioned in the evidence, to Clodfelter, they cannot convict the defendant."

After recapitulating the evidence and explaining the offence of false pretense, as defined in *State* v. *Phifer*, his Honor gave the instruction which is set out in opinion of the Court.

There was a verdict of guilty, whereupon defendant moved for a new trial, upon the grounds, that the instructions asked were not given; for error in the charge, as given; and " because the Court submitted the question of guilt to the jury, when, on the demurrer to the evidence, he should have directed the jury either to return a verdict of guilty or not guilty, as he thought right, on the evidence."

Motion for new trial overruled; judgment against defendant, and he appealed.

*Attorney General*, for the State.
No counsel for the defendant.

AVERY, J.  The bill of indictment was as follows:

"STATE OF NORTH CAROLINA, ⎱ Superior Court,
   "Davidson County.          ⎰     Sept. Term, A. D. 1888.

"The jurors for the State, upon their oath, present : That Levi Hargrave, late of the county of Davidson, on the fifth day of July, in the year of our Lord one thousand eight hundred and eighty-eight, at and in the county of Davidson, unlawfully and knowingly, intending and devising to cheat and defraud A. L. Clodfelter of his goods, moneys, chattels and property, did, then and there, unlawfully, knowingly, and designedly falsely pretend to W. N. Kinney, clerk and agent of F. R. Loftin, County Register of Deeds of said county, that he, said Levi Hargrave, was the owner and entitled to the proceeds of a certain county order, which is as follows, that is to say :

"$2.10.      OFFICE BOARD OF COUNTY COMMISSIONERS,
                "DAVIDSON COUNTY, N. C., July 3, 1888.

   "*Ordered,* That the County Treasurer pay Levi Hargrave two dollars and ten cents for half fees, State *v.* Wm. Mebane.
   "A true copy:
   "No. 271.                            F. R. LOFTIN.

Whereas, in truth and in fact, he, the said Levi Hargrave, was not the owner and entitled to the possession and proceeds of the said order, he, the said Levi, having long before that time assigned his right, title and claim thereto for value

to the said A. L. Clodfelter, as he, the said Levi Hargrave, then and there well knew, by color and means of which said false pretence and pretences, he, the said Levi Hargrave, did then and there unlawfully, knowingly and designedly obtain from the said W. N. Kinney, clerk and agent as aforesaid of the said County Register of Deeds, the said order for the said $2.10, being then and there the property of the said A. L. Clodfelter, with intent to cheat and defraud the said A. L. Clodfelter, to the great damage of the said A. L. Clodfelter, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.

(Signed)                              LONG, *Solicitor.*"

The defendant was a witness in a criminal prosecution and proved a ticket for four dollars and twenty cents, and the costs having been taxed against the county of Davidson, was entitled to half the amount from the county. He assigned this claim against the county to one A. L. Clodfelter, and received from him goods to the amount due on the order from the county. Clodfelter gave the writing to one Moyer, deputy of the Clerk of said Court, who marked the defendant's witness ticket as transferred to the use of Clodfelter. The defendant told Clodfelter that half the charges were due him from the county, and thereupon the latter gave him meat, flour, &c., out of his store to the value of two dollars and ten cents, and took the assignment. The claim was audited and allowed by the Board of County Commissioners, and W. N. Kinney, who was Register of Deeds and *ex-officio* Clerk of the Board, was empowered by the Board to deliver an order to the County Treasurer to pay the amount due to the owner. The Clerk of the Court or his deputy lost the assignment, and therefore failed to notify the Board of Commissioners or their Clerk of the transfer of the ticket, or to make the fact of the assignment appear in the bill of

costs sent to the Board to be audited. Clodfelter notified Kinney that the claim had been assigned to him, and was told by the latter that there had been no previous notice of the transfer. Clodfelter went again to the Clerk of the Court to find the written assignment. Before Clodfelter again applied to Kinney for the amount due on the witness ticket, the defendant had told Kinney that he had not assigned the claim to Clodfelter, and that he was still the owner of it, and, as Kinney testified, he had been induced by that representation to give defendant the order incorporated in the bill of indictment. The defendant collected the amount due on the order from the County Treasurer.

The defendant told W. N. Kinney, Register of Deeds, who was charged by the Board of County Commissioners with the duty of issuing drafts to the County Treasurer to pay claims, audited and allowed by said Board, that he was entitled to receive an order for two and $\frac{10}{100}$ dollars, allowed on a witness ticket previously proven by defendant, and that he had not assigned the said ticket. This representation was false, for he had already transferred the ticket, in writing, to A. L. Clodfelter, and received goods for it. If Kinney was induced by the falsehood to deliver the order set out in the bill of indictment, the defendant obtained something of value from Kinney. Being, therefore, a false representation of a subsisting fact, calculated to deceive, and which did deceive, whereby the defendant obtained the order mentioned (which was property), his Honor did not err in overruling the demurrer to the evidence, and in refusing to give the first instruction asked, which is in the following language: " There is no evidence sufficient to go to the jury, that the defendant obtained the order, produced in evidence, from Kinney by any false and fraudulent representations, and, therefore, they must acquit the defendant." The representation was calculated to deceive, because the Clerk had, by

accident, mislaid the assignment, and Kinney had no evidence in his office of the fact that Clodfelter was the real owner.

After recapitulating the evidence and explaining the offence of false pretence, as defined in the case of *State* v. *Phifer*, his Honor instructed the jury as follows : " If the jury believe, beyond a reasonable doubt, that the defendant, Levi Hargrave, fraudulently, designedly, knowingly and falsely represented to W. N. Kinney, whether such representations be in words or acts, that he had not assigned his claim to Clodfelter, and that he was the owner of the order, when in truth and in fact he was not, and that by reason thereof he obtained the order from Kinney, he must be guilty. If the jury are not so satisfied, they must acquit."

We think that the instruction given was substantially in compliance with the law, as stated in *State* v. *Dixon*, 101 N. C., 741 ; *State* v. *Wilkerson*, 98 N. C , 696, and *State* v. *Phifer*, 65 N. C., 321. The question of *scienter* was distinctly left with the jury, and they, under the instruction, passed upon every matter material in arriving at a conclusion as to defendant's guilt.

The second paragraph of the prayer, solicited for defendant, was a request to the Court to tell the jury that there was no evidence that the claim was assigned to Clodfelter, when the latter and the witness Leonard had both testified that an assignment in writing was signed by defendant in their presence. We do not understand the request to suggest a doubt as to whether the defendant could lawfully transfer such a claim in the manner described by the witnesses. That question is settled, however. *Harris* v. *Burwell*, 65 N. C., 584 ; *Havens* v. *Potts*, 86 N. C., 31.

The question (raised by the third paragraph of the instructions asked) whether Kinney issued the order, because the bill of costs sent over from the Clerk's office contained no notice of the transfer, or because of the representation by

the defendant that he was the owner of the claim, was fairly submitted to the jury. Under the instruction given they could not have found the defendant guilty without being fully convinced, from the testimony, that he obtained the order only by falsely representing that he was the owner. The Judge was not bound to give instructions in the words of counsel. *Brink* v. *Black,* 77 N. C., 59. We do not think that it was material whether Kinney was told by Clodfelter of the assignment of the latter, and the fact could only be considered by the jury as determining what means operated on Kinney's mind and induced him to deliver and issue the order. We see no error in the refusal to give the jury the charge requested in the fifth paragraph of instructions asked. The jury declared by their verdict, in the light of the testimony and the instruction given, that they were satisfied, beyond a reasonable doubt, that the order was obtained by means of the falsehood told by the defendant to Kinney.

Paragraph three of the prayer submitted was as follows: " The bill of indictment charging that A. L. Clodfelter was cheated and defrauded, and the evidence being that the county alone, if anybody, was cheated and defrauded, the jury should acquit the defendant." The point raised was, whether the Court should have held that there was a fatal variance between the charge and the evidence, and directed a verdict of not guilty to be entered on that ground. The Board of County Commissioners exercise all of the powers granted to the county as a municipal corporation, and are the only persons through whom the corporation can be sued. *The Code,* §§ 702 to 705, both inclusive. The Board intrusted orders for audited claims against the county to the Register of Deeds, who was, *ex-officio,* Clerk of the Board, for delivery. If he delivered them to parties the Treasurer would pay them. The Clerk had sent to the Board of Commissioners evidence to show that, in a State case in which a defendant had been convicted, Levi Hargrave had been allowed to prove a ticket

as a witness on behalf of the State, and that the defendant in that case, after conviction, had taken the insolvent debtor's oath, and had been discharged from custody for costs charged against him, thereby making the county liable for half the costs. The ticket was presumptive evidence of the facts appearing from it. *Deaver* v. *Commrs.*, 80 N. C., 116. The Clerk had not made out the charges of Hargrave to the use of Clodfelter, and Kinney, therefore, as lawful agent of the county, could issue an order to the person who was presumed to be the rightful owner of the amount taxed against the county, or the ticket proven by him, and when that order was paid the county was discharged from liability. The Clerk might, and probably ought, to have noted the assignment on his records, and stated in the bill of costs that the ticket was assigned to the use of Clodfelter, if he had sufficient evidence of the transfer, but he failed to do so. The natural consequence of procuring the order from Kinney and collecting it, was to discharge the county, when, but for the falsehood, Kinney would have delivered the order to Clodfelter, and he would have received the money. We think that there was evidence of the intent to defraud Clodfelter, and that the fraud contemplated was in the end a fact accomplished.

If the exception, growing out of the refusal to give the instruction prayed for, can be fairly construed to raise the same question as a motion in arrest of judgement, on the ground that the bill in this form could not be sustained, we find the form given by Wharton, and taken from a precedent approved in another State, and drawn upon a statute substantially the same as ours. Wharton's Precedents of In., No. 528. The making of a false representation to one person with intent to defraud another, was expressly held by the Court to be indictable in *State* v. *Dixon, supra*. It has been held by this Court, the Supreme Court of Massachusetts and other States, that when a person makes a false rep-

resentation to an agent, with intent to defraud the principal, a conviction on a bill of indictment embodying such a charge would be sustained. *State* v. *Wilkerson, supra ; Com.* v. *Hailey,* 7 Metcalf, 462; *Com.* v. *Coll,* 21 Peckering, 514; Wharton's Crim. Law, secs. 2145 and 2146; Bishop on Stat. Crimes, sec. 134.

While no case, heretofore decided by this Court, has presented precisely the point, whether a charge that a defendant obtained something of value from one person by a false representation, made to him with intent to defraud a third person, not connected as agent, we think that the facts bring the case within the meaning of the statute, and clearly within the mischief intended to be remedied by it. It is analogous to the case of *State* v. *Dixon, supra,* and clearly comes within the principle stated in that case.

There is no error. The motion for a new trial is refused. No error.　　　　　　　　　　　　　　　　　Affirmed.