THE STATE OF NORTH CAROLINA v. RALPH HINES

No. 8110SC439

(Filed 17 November 1981)

1. **False Pretense § 3— obtaining money by false pretenses—sufficiency of the evidence**

The evidence was sufficient to support the permissible inference that defendant intended to cheat or defraud when he obtained checks from the prosecuting witnesses where the evidence tended to show that upon learning the prosecuting witnesses were considering making an investment, he suggested a proposed venture; that a prosecuting witness wrote defendant a check for $800

to cover legal fees and expenses of the incorporation of the venture; that she left the payee blank because defendant was uncertain how it should be completed; that when the cancelled check was returned, defendant's name had been filled in as payee; that the prosecuting witness had not given defendant permission to deposit the check in his personal account; that another check for $473, intended as the first month's rent on a building for the venture was given to defendant; that the money was not received as rent and a definite lease agreement had not been arrived at; and that defendant had never met with an attorney about incorporating the business.

## 2. Criminal Law § 112.2— reasonable doubt—instruction proper

A charge on "reasonable doubt" that "the rule of reasonable doubt does not require that you be satisfied of the defendant's guilt beyond all doubt before you would return a verdict of guilty against him" was proper when read in context with the entire charge.

## 3. False Pretense § 3.2— obtaining property by false pretenses—instructions proper

There was no merit to defendant's contention that the court erred in failing to instruct that to constitute false pretense, the misrepresentation of a subsisting fact must not only be intended to deceive, but it must also be relied upon and in fact deceive where the court repeatedly informed the jury that to find defendant guilty it must find that the prosecuting witnesses were in fact deceived and gave defendant their money in reliance upon his false representations.

## 4. False Pretense § 3.2— obtaining property by false pretenses—instruction

The court did not err in failing to instruct that "evidence of nonfulfillment of a contract obligation standing alone shall not establish the essential element of intent to defraud," G.S. 14-100(b), where the court explained the law arising on the evidence as provided by G.S. 15A-1232 and the defendant did not request special instructions.

## 5. Criminal Law § 101.4— permitting the jury to take exhibits to jury room—no error

Where the foreman asked that the jurors be allowed "to examine the written stuff that was submitted," in a prosecution for obtaining property by false pretenses, it was not error for the court to allow the request pursuant to G.S. 15A-1233(b) where there was no objection by defendant.

## 6. Criminal Law § 101.4— request of jury to hear testimony of witness—denial proper

No abuse of discretion was shown in the denial of a jury foreman's request that the jury be allowed to hear again the testimony of one of the witnesses in defendant's trial on obtaining property by false pretenses where the court cited problems with extracting portions of evidence rather than reviewing it in its entirety, and the court asked the members of the jury instead "to rely upon their collective recollection of the evidence."

---

State v. Hines

---

APPEAL by defendant from *Canaday, Judge.* Judgment entered 5 December 1980 in Superior Court, WAKE County. Heard in the Court of Appeals 15 October 1981.

Defendant appeals from judgments of imprisonment entered upon verdicts of guilty of two counts of obtaining property by false pretense.

*Attorney General Edmisten, by Assistant Attorney General Roy A. Giles, Jr., for the State.*

*Gulley, Barrow & Boxley, by H. Spencer Barrow, for defendant appellant.*

WHICHARD, Judge.

### STATE'S EVIDENCE

The State's evidence tended to show the following: Dr. and Mrs. Frankford M. Johnson, the prosecuting witnesses, met defendant when he began dating their daughter. Defendant learned the Johnsons were considering making an investment, and he suggested a clothing store catering to large and tall men.

Defendant and the Johnsons discussed the proposed venture for several months. They agreed the business should be incorporated, and defendant was to arrange the incorporation with an attorney friend. Mrs. Johnson, at defendant's request, wrote defendant a check for $800.00 to cover legal fees and expenses of incorporation. She left the payee blank, because defendant was uncertain how it should be completed. When the cancelled check was returned, defendant's name had been filled in as payee. Mrs. Johnson had not given defendant permission to deposit the check in his personal account.

Defendant took the Johnsons to a mall to view possible sites for the store. He subsequently asked Mrs. Johnson for a check for $473.00 as a deposit on the first month's rent to hold the store site. She gave the check to defendant with the understanding that he would deposit it in a corporate account. She did not give him permission to deposit it in his personal account. Defendant had not in fact arrived at a definite lease agreement with the mall, and the mall was not at any time holding the space the Johnsons had viewed. The mall manager never had any discussions with

defendant concerning his getting $473.00, or any amount of money, to hold any space at the mall. The manager never requested nor received any money from defendant.

Subsequently the Johnsons' son learned from the attorney defendant indicated he had contacted that no corporation had been established. The entire Johnson family then met with the attorney and learned that defendant had never been to see him about incorporating the business. They also learned that defendant had misrepresented many other matters. Immediately upon leaving the attorney's office, the Johnsons went to the police.

### DEFENDANT'S EVIDENCE

Defendant testified in his own behalf that his intent in securing the $800.00 check was to have $400.00 for expenses of incorporation and $400.00 to issue 400 shares of stock with a par value of $1.00 each. He indicated he told Mrs. Johnson to leave the payee blank on the check because he was uncertain how the attorney would want the check completed. He further testified that he had recalled the rent per month at the mall to be $946.00; that he told Mrs. Johnson he had one-half that amount; that she agreed to put up the other one-half; that he deposited her check for $473.00 in his account in order to write the mall a check for the entire amount; and that he did not think he ever asked Mrs. Johnson's permission to deposit her check in his account. On cross-examination defendant testified that he had been convicted of obtaining property by false pretense on two previous occasions.

### SUFFICIENCY OF EVIDENCE

[1] Defendant contends the judgment should be vacated and the charges dismissed, pursuant to G.S. 15A-1227(d) and G.S. 15A-1446(d)(5),[1] on the ground that the evidence was insufficient as a matter of law to sustain the convictions. His argument is that "it is clear, in fact admitted, that misrepresentations were made," but that "it was not established that the defendant made false representations that were calculated to deceive and which were intended to deceive."

It is an essential element of obtaining property by false pretense that the act be done "knowingly and designedly . . .

---

1. No motions were made at trial to test the sufficiency of the evidence.

with intent to cheat or defraud." G.S. 14-100. *See State v. Phillips*, 228 N.C. 446, 45 S.E. 2d 535 (1947). "Intent [, however,] is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred." *State v. Bell*, 285 N.C. 746, 750, 208 S.E. 2d 506, 508 (1974). "[I]n determining the presence or absence of the element of intent, the jury may consider the acts and conduct of the defendant and the general circumstances existing at the time of the alleged commission of the offense charged . . . ." *State v. Norman*, 14 N.C. App. 394, 399, 188 S.E. 2d 667, 670 (1972).

We find the evidence recited above sufficient to support the permissible inference that defendant intended to cheat or defraud when he obtained the checks in question. Thus, "[i]t was for the jury to determine, under all the circumstances, defendant's ulterior criminal intent." *Bell*, 285 N.C. at 750, 208 S.E. 2d at 508. This assignment of error is overruled.

INSTRUCTIONS TO JURY

Defendant assigns error relating to instructions to the jury as follows:

I.

[2] Defendant contends the court erred in the following portion of its explanation of "reasonable doubt":

[T]he rule of reasonable doubt does not require that you be satisfied of the defendant's guilt beyond all doubt before you would return a verdict of guilty against him. It is hardly likely that any jury in the trial of any criminal case could ever be satisfied of a defendant's guilt beyond all doubt.

He argues this portion was likely to create an impression with the jury that it was their responsibility to convict him if they believed the evidence indicated a possibility of guilt.

Before rendering the portion complained of, the court had instructed as follows:

Now a reasonable doubt is the doubt based upon reason and common sense arising out of the evidence in the case, or the lack of evidence. It is not a doubt arising from sympathy or from prejudice. It is not a vain, imaginery or capricious

doubt; and when it is said that the jury must be satisfied of a defendant's guilt beyond a reasonable doubt, it means that the jury must be entirely convinced or fully satisfied of his guilt; and if the jury, after considering all the evidence in the case, is not convinced of the defendant's guilt to a moral certainty, then the jury may be said to have a reasonable doubt as to his guilt.

A charge must be construed contextually, *State v. Bailey*, 280 N.C. 264, 185 S.E. 2d 683, *cert. denied*, 409 U.S. 948, 34 L.Ed. 2d 218, 93 S.Ct. 293 (1972); and so construed, the jury could not have been misled by the charge here to believe as defendant contends. In *State v. Brackett*, the Supreme Court found no error in the following instruction:

The defendant is presumed to be innocent, and this presumption goes with him throughout the entire trial and until the jury is satisfied beyond reasonable doubt of his guilt; *not satisfied beyond any doubt, or all doubt, or a vain or fanciful doubt*, but rather what that term implies, a reasonable doubt, one based upon common sense and reason, generated by insufficiency of proof.

218 N.C. 369, 372, 11 S.E. 2d 146, 148 (1940) (emphasis supplied). The substance of that instruction and the instruction here do not differ. This assignment of error is overruled.

II.

Defendant also contends the above complained of portion amounted to an expression of opinion by the trial court, in violation of G.S. 15A-1232, that defendant was guilty. The contention is without merit. The court merely informed the jury that it must find defendant guilty beyond a reasonable doubt, but not beyond all doubt. The instruction is in essential accord with language approved in *Brackett*, 218 N.C. 369, 11 S.E. 2d 146. This assignment of error is overruled.

III.

[3] Defendant contends the court erred in failing to instruct that to constitute false pretense, the misrepresentation of a subsisting fact must not only be intended to deceive, but it must also be relied upon and in fact deceive. The contention is without merit.

The court on four occasions referred to false representations made by defendant to the Johnsons, then stated:

(1) and the State must further so satisfy you that the defendant *thereby, that is by the use of such representations, false representations, obtained a sum of money from [the Johnsons];*

(2) and if the State has further so satisfied you that the defendant *by making such statements obtained the sum of $800 from [the Johnsons]* . . . it would be your duty . . . to return a verdict of guilty;

(3) the State must satisfy you . . . that the defendant made the representation . . . and that this statement was false and that the defendant knew that such statement was false and that he made such statement with the intent to cheat or defraud . . . *and that he did obtain money as the result of making such false representation;*

(4) if the State has so satisfied you that the defendant made such representation with the intent to cheat or defraud . . . and . . . has further so satisfied you the defendant *thereby, that is by reason of such representation, obtained the sum of $473 from [the Johnsons],* it would be your duty . . . to return a verdict of guilty of this offense.

By these portions of the charge the court repeatedly informed the jury that to find defendant guilty it must find that the Johnsons were in fact deceived and gave defendant their money in reliance on his false representations. "If the false pretense caused the victim to give up his property, it logically follows that the property was given up because the victim was in fact deceived by the false pretense." *State v. Cronin,* 299 N.C. 229, 238, 262 S.E. 2d 277, 283 (1980).

The following instruction on obtaining property by false pretense has been held to be "substantially in compliance with the law":

If the jury believe, beyond a reasonable doubt, that the defendant . . . fraudulently, designedly, knowingly and falsely represented to [the victim] . . . that he had not assigned his claim . . . , and that he was the owner of the order, when in

truth and in fact he was not, and that by reason thereof he obtained the order from [the victim], he must be guilty. If the jury are not so satisfied, they must acquit.

*State v. Hargrave*, 103 N.C. 328, 334, 9 S.E. 406, 408 (1889). The instructions here were in substantial accord with those approved in *Hargrave*. This assignment of error is overruled.

## IV.

Defendant contends the court erred in failing to instruct that the jury had to find that the misrepresentation was material and was a proximate and immediate inducement to the transaction. The contention is without merit. The portions of the instructions quoted in III above clearly indicated to the jury that it must find a causal connection between the false representations made and the delivery of the checks to defendant. This assignment of error is overruled.

## V.

[4] Defendant contends the court erred in failing to instruct that "[e]vidence of nonfulfillment of a contract obligation standing alone shall not establish the essential element of intent to defraud." G.S. 14-100(b).

"In instructing the jury, the judge must declare and explain the law arising on the evidence." G.S. 15A-1232. He must instruct the jury "on all substantial features of the case arising on the evidence." *State v. Dooley*, 285 N.C. 158, 163, 203 S.E. 2d 815, 818 (1974). The court here instructed on all essential elements of obtaining property by false pretense. It thus instructed "on all substantial features of the case arising on the evidence." *Id.*

The jury could not have been misled by the instructions given to find defendant guilty solely on the ground that he did not fulfill his contractual obligations. If defendant desired special instructions on G.S. 14-100(b), he should have requested them. G.S. 15A-1231; *State v. Boyd*, 278 N.C. 682, 180 S.E. 2d 794 (1971). This assignment of error is overruled.

### JURY ROOM VIEW OF EXHIBITS

[5] After the jury commenced deliberations, and before a verdict was reached, the foreman asked that the jurors be allowed "to ex-

amine the written stuff that was submitted." The court allowed the request pursuant to G.S. 15A-1233(b), which in pertinent part provides: "Upon request by the jury and with the consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence."

Defendant contends the court erred in allowing this view of the exhibits, citing *State v. Bell*, 48 N.C. App. 356, 269 S.E. 2d 201, *disc. rev. denied*, 301 N.C. 528, 273 S.E. 2d 455 (1980). This court, in *Bell*, found that the trial court erred in allowing exhibits to be taken to the jury room *over the objection of defendant*, but held the error harmless. The record here reveals no objection by defendant to allowance of the foreman's request. Hence, the jury view was within the court's discretion; and no abuse of discretion has been shown. This assignment of error is overruled.

### DISALLOWANCE OF READING FROM TRANSCRIPT

[6] At the time he requested a jury room view of the exhibits, the jury foreman also requested that the jury be allowed to hear again the testimony of the attorney defendant indicated he had contacted regarding incorporation of the business venture. The court cited problems with extracting portions of evidence rather than reviewing it in its entirety, and refused the request on the basis that "it might result in error." It asked the members of the jury instead "to rely upon [their] collective recollection of the evidence." Defendant assigns error to this refusal.

The grant or denial of this request was in the court's discretion. G.S. 15A-1233(a). No abuse of discretion has been shown in the denial. *State v. Lang*, 301 N.C. 508, 272 S.E. 2d 123 (1980), relied on by defendant, is distinguishable. The trial court in *Lang* had advised the jury that the transcript was not available to it. The Supreme Court stated this indicated that the court had not exercised its discretion to decide whether under the facts of the case the transcript should be made available. Here, by contrast, the court's statement clearly indicates that it was denying the request in the exercise of its discretion. This assignment of error is overruled.

RESULT

· No error. ·

Judges VAUGHN and HILL concur.