STATE OF NORTH CAROLINA v. RAY DANIEL UPRIGHT, JEROME HERMAN FINK AND JOHN HENRY RUSSELL

No. 8419SC205

(Filed 28 December 1984)

**1. Criminal Law § 105.1— evidence by defendant—waiver of prior motion to dismiss**

By presenting evidence at trial, defendant waived his right to assert the denial of his motion for dismissal made at the close of the State's evidence as error on appeal. G.S. 15-173.

**2. Homicide § 21.7— second degree murder—sufficiency of evidence**

The State's evidence was sufficient to support conviction of defendant for second degree murder where it tended to show that defendant was one of four people within close proximity to the victim as he fell to the floor, defendant was the only one with a gun in his hand seconds after the victim was shot, and the fatal wound was inflicted by a bullet shot from a weapon pressed directly against the victim's back. Alleged discrepancies between the testimony of the State's principal witness and the physical evidence were for the jury to determine.

**3. Criminal Law § 92.2— consolidation of charges—charges against codefendants not lesser included offenses of charge against defendant**

Charges against defendant for second degree murder and charges against two codefendants for accessory after the fact to second degree murder were properly consolidated for trial even though the charges against the codefendants were not lesser included offenses of the charge of second degree murder. G.S. 15A-926.

**4. Criminal Law § 102.4— passing defendant's statements to jury—absence of prejudice**

Defendant was not prejudiced when the prosecutor passed defendant's statements to the jury where the record shows that the court had denied the prosecutor the right to pass a codefendant's statements to the jury but there

State v. Upright

was no evidence that defendant's statements were within this prohibition; defendant's statements were used on cross-examination of defendant; and, upon objection, defendant's statements were immediately withdrawn from the jury.

5. **Homicide § 30.2— second degree murder—instruction on voluntary manslaughter not required**

In a prosecution for second degree murder, evidence of the victim's assault of a third person, unknown to defendant, was not legally sufficient provocation to require the trial court to instruct on voluntary manslaughter.

6. *Criminal Law § 112.1— sufficiency of instructions on reasonable doubt*

When read contextually, the trial court's instructions sufficiently emphasized the State's burden of proving the elements of the offense and defendant's guilt thereof beyond a reasonable doubt and did not fail to inform the jury that *if they had a reasonable doubt as to any one or more elements of the* offense, they should return a verdict of not guilty.

7. **Criminal Law § 138— sentence exceeding presumptive term—single aggravating factor**

The trial court's imposition of a sentence in excess of the presumptive term for second degree murder was supported by the trial court's finding of the single aggravating factor that defendant had a conviction or convictions punishable by more than sixty days confinement. G.S. 15A-1340.4(b).

8. **Criminal Law § 11— accessory after the fact to murder—sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction of accessory after the fact of second degree murder where it tended to show that defendant saw the shooting of the victim, the person who did it, and the seriousness of the victim's wound before rendering assistance to the perpetrator by disposing of the murder weapon.

9. **Criminal Law § 92.5— defenses of codefendants not antagonistic—severance not required**

A defendant charged with accessory after the fact of murder and a codefendant charged *with murder did not present antagonistic defenses which re*quired severance of their trials where defendant contended that the victim was not shot at the alleged crime scene and the codefendant contended that a scuffle occurred and the victim was killed by an unknown person. Nor did the *codefendant's decision to testify require severance.*

10. **Indictment and Warrant § 8.4— election between offenses not required**

Defendant's due process rights were not violated when the prosecutor proceeded to trial on a charge against him for accessory after the fact of second degree murder without dismissing a murder indictment against him.

11. **Criminal Law § 11— accessory after fact to second degree murder—sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction of accessory after the fact to second degree murder where it tended to show

that, after the victim was shot and killed in a bar partly owned by defendant, defendant grabbed two shotguns, gave one to the man guarding the door and kept one, told everyone to line up against the wall and to tell the police that the victim was already shot when he walked in off the street and fell to the floor, and held a gun on the crowd while the perpetrator took the name and address of each patron of the bar.

**12. Criminal Law § 138— drinking by defendant as mitigating factor—insufficient evidence**

The trial court did not err in failing to find as a mitigating factor that defendant had been drinking where there was no evidence that he was in such a state of inebriation so as to impair his ability to understand the consequences of his conduct.

APPEAL by defendants from *Rousseau, Judge.* Judgments entered 26 August 1983 in Superior Court, GUILFORD County. Heard in the Court of Appeals 19 October 1984.

The defendant Ray Daniel Upright was tried and convicted of second degree murder. Defendants Jerome Herman Fink and John Henry Russell were tried and convicted with accessory after the fact to second degree murder. These cases were consolidated for trial.

The State's evidence tended to show the following: In the early morning hours of 27 November 1983, about thirty-five to forty people were drinking and gambling at The Rail in Rowan County. Among those present were the three defendants, the victim, James Brooks, and Morris Mullins, the State's principal witness.

Morris Mullins arrived at The Rail at about 1:30 a.m. and remained in the downstairs area throughout the early morning of 27 November 1983. He drank beer and shot pool. Throughout the morning he noticed that Brooks was playing blackjack and winning continuously. He also noticed that Brooks had between $1,500 to $2,000 on his person. Brooks was flashing the money about and money was even hanging out of his pockets. Later in the morning, Brooks accused the dealer of cheating. At that time, defendant Jerome Fink, one of the owners of The Rail, began dealing the cards. Thereafter, at about 5:30 a.m., a single gunshot was fired. Morris Mullins turned to look in the direction from which the shot was fired. He saw Brooks, who was on his hands and knees, slide forward onto his face and stomach. Morris

Mullins also observed the three defendants and the card dealer standing in close proximity to Brooks. As he looked at them, he saw defendant Upright with a revolver in his right hand. As Morris Mullins watched, defendant Upright moved the revolver from an upward position and brought it down by his right side. He did not see a gun on the other persons in close proximity to Brooks. After Brooks collapsed, defendants Upright and Russell went through his pockets and removed his money. Defendant Upright handed defendant Russell his gun and told him to get rid of it. Defendant Russell took the gun and left The Rail. A few moments later, defendant Russell returned and went behind the bar. After going through the garbage, he picked up a bag of garbage and left. He was not seen at The Rail again.

Meanwhile, defendant Fink had removed two sawed-off shotguns from behind the bar. He handed one of the shotguns to the man guarding the door. Defendant Fink ordered everyone to line up against the wall. He told the patrons that if they told the police anything they and their families would be in danger. Fink then told them that if they were contacted by the police, they should tell the police that Brooks came in off the street already shot. After giving the patrons these instructions, defendant Upright and defendant Fink made a list of the name and address of each patron.

At approximately 7:00 a.m. on that same morning, Deputy Sheriff Fite arrived at The Rail and found the body of James Brooks lying face-up. Defendants Upright and Fink, along with two other persons, were at the scene at this time. Other officers arriving at the scene, picked up Jack Clark as he attempted to leave the area. Clark had been shot and pistol-whipped by Brooks earlier that morning. As a result of the shot and the beating, Clark was knocked out, and he did not regain consciousness until around 6:30 a.m. at which time he saw the body of Brooks lying face-up near the bar.

Evidence for the defense tended to show that Brooks was shot by an unknown person at or about 6:15 or 6:30 a.m. on the morning of 27 November 1983. Other defense witnesses testified that when Brooks grabbed a gun from defendant Upright, and began waving it around, a struggle ensued, three shots were fired, and Brooks fell. The evidence for the defense tended to show also

that defendant Upright was at the bar during the struggle and when the shots were fired. At that time, defendant Upright went over to Brooks and rolled him on his side, pulled up his shirt, and saw that he had been shot in the back. Defendant Upright then picked up a pistol that was near the body and laid it on the bar.

Additionally, defendant Fink presented evidence which tended to show that no shots were fired at The Rail during the early morning hours of 27 November 1983.

At the close of the State's evidence and again at the close of all the evidence, defendants moved for and were denied motions for dismissal.

From a verdict of guilty of second degree murder and a judgment of twenty-five years imprisonment, defendant Upright appealed. From a verdict of guilty of accessory after the fact to second degree murder, and a judgment imposing a term of eight years, defendant Fink appealed. From a verdict of guilty of accessory after the fact to second degree murder, and judgment of six years imprisonment, defendant Russell appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General David W. Broome, Jr., for the State.*

*Donald L. Weinhold, Jr., for defendant appellant Ray Daniel Upright.*

*Corriher & Whitley, by James A. Corriher, for defendant appellant Jerome Herman Fink.*

*Appellate Defender Adam Stein by Assistant Appellate Defender David W. Dorey, for defendant appellant John Henry Russell.*

WEBB, Judge.

### A.    Defendant Upright's Appeal

In his first three assignments of error, defendant Upright contends that the trial court erred in denying his motions for dismissal and judgment notwithstanding the verdict because the evidence was insufficient to find that he committed the crime charged beyond a reasonable doubt. Defendant Upright argues that the evidence was wholly circumstantial and that the State's

principal witness admitted that he did not see him shoot Brooks. It is defendant Upright's position that for these reasons the evidence adduced at trial was insufficient to go to the jury and to support the verdict of guilty of second degree murder.

[1, 2] By presenting evidence at trial Upright waived his right to assert the denial of his motion for dismissal made at the close of the State's evidence as error on appeal. G.S. 15-173, *State v. Mendez*, 42 N.C. App. 141, 146-47, 256 S.E. 2d 405, 408 (1979). However, his motion to dismiss at the close of all the evidence draws into question the sufficiency of all the evidence to go to the jury. *State v. Stewart*, 292 N.C. 219, 223, 232 S.E. 2d 443, 447 (1977). The evidence is considered in the light most favorable to the State, with the State being entitled to every reasonable inference therefrom. *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E. 2d 649, 652-53 (1982). *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578, 581-82 (1975). If there is substantial evidence, irrespective of whether it is direct or circumstantial or both, that the crime charged was committed by the defendant, then a motion to dismiss is properly denied. *State v. McKinney, supra.* Turning to the facts in this case, we believe that the evidence adduced at trial was sufficient to render defendant Upright's guilt an issue for the jury. There was evidence that defendant Upright was one of four people within close proximity to Brooks as he fell to the floor. There was eyewitness testimony that defendant Upright was the only one with a gun in his hand seconds after Brooks was shot. There was also expert medical testimony that the fatal wound was inflicted by a bullet shot from a weapon pressed directly against the victim's back. From this evidence a jury could reasonably infer that defendant Upright committed the offense charged. While the finding of defendant Upright's guilt depended solely on circumstantial evidence, it has long been established in this State that "[t]he chain of circumstantial evidence . . ." may be sufficient to establish guilt of a crime beyond a reasonable doubt. *State v. Thomas*, 296 N.C. 236, 250 S.E. 2d 204 (1978). *State v. Rowland*, 263 N.C. 353, 139 S.E. 2d 661 (1965).

Defendant Upright argues, however, that the discrepancies and inconsistencies between the testimony of the State's principal witness, Morris Mullins, and the physical evidence rendered the evidence insufficient to support the verdict. There was uncontroverted physical evidence that Brooks had received several mi-

nor injuries in a scuffle prior to the shooting but that the fatal bullet wound was made by a gun pressed tightly against his back. Morris Mullins testified that he did not hear or see a scuffle prior to the shooting. He also testified that moments after the fatal shot, he saw Brooks slide forward on his hands and knees and that Brooks did not fall backward or hit his head. At this time, defendant Upright was facing Brooks. This evidence would arguably indicate that Brooks was shot by someone other than defendant Upright. Such variance in the evidence, however, is one which goes to the credibility rather than the sufficiency. It is within the province of the jury to pass upon the credibility of the witnesses and weight to be accorded the evidence. *State v. White*, 298 N.C. 430, 440, 259 S.E. 2d 281, 287 (1979). Furthermore, one of the fundamental responsibilities of a jury is to choose between competing versions of the facts. Simply stated, the resolution of discrepancies in the evidence is within the province of the jury. Here the jury resolved these discrepancies in favor of the State, and this it was entitled to do. Accordingly, we hold that these assignments of error are without merit.

[3] Defendant Upright next contends that the trial court erred in granting the State's motion to consolidate the trials of defendant Upright and co-defendants Jerome Fink and John Russell. Specifically, he contends that joinder was improper because his co-defendants were charged with different offenses which were not lesser included offenses of the charge of second degree murder.

The decision whether to join cases against co-defendants is one within the sound discretion of the trial court. *State v. Barnett*, 307 N.C. 608, 619, 300 S.E. 2d 340, 346 (1983). *State v. Jones*, 57 N.C. App. 460, 462-63, 291 S.E. 2d 869, 871 (1982). Absent a showing that a consolidated trial has deprived a defendant of a fair trial, the exercise of trial court discretion will not be disturbed. *State v. Smith*, 291 N.C. 505, 519, 231 S.E. 2d 663, 672 (1977). *State v. Jones, supra.* Since the co-defendants were charged with an offense different from the offense for which defendant Upright was charged, the propriety of conducting a joint trial is governed by G.S. 15A-926. Under this statute, joinder of defendants for trial is permitted when the crimes charged grew out of the same acts or transactions and much of the same evidence is necessary or applicable to all defendants. G.S.

15A-926(b)(2)(b)(2), (3). Joinder is also proper whether the motion is made orally or in writing. G.S. 15A-951(a). *State v. Slade*, 291 N.C. 275, 282, 229 S.E. 2d 921, 926 (1976). Finding consolidation properly authorized, we conclude that there was no abuse of discretion. This assignment of error is without merit.

**[4]** Defendant Upright's next assignment of error concerns the misconduct of the prosecutor in passing his statements to the jury. He contends that the submission of these statements to the jury, which were in violation of an order of the court, tended to prejudice and confuse the jury. We do not agree.

The record reveals that the trial court admitted Morris Mullins' statements into evidence, but denied the prosecutor the right to pass these statements to the jury. There is no evidence in the record, however, that defendant Upright's statements were within this prohibition. Furthermore, the record reveals that these statements were used on cross-examination of defendant Upright. Additionally, these statements, upon objection, were immediately withdrawn from the jury. There is no evidence in the record that defendant Upright was prejudiced by the actions of the prosecutor. This assignment of error is, therefore, without merit.

**[5]** Defendant Upright next contends that the trial court erred in failing to charge the jury on the issue of voluntary manslaughter. He argues that there was sufficient evidence to compel such a charge even though a special request was not made.

A defendant is entitled to instructions on a lesser included offense when there is evidence from which a jury could find that the defendant committed the lesser offense. *State v. Ford*, 297 N.C. 144, 150, 254 S.E. 2d 14, 18 (1979). When there is no such evidence, then the trial court should refuse to charge on the unsupported lesser offense. *State v. Hampton*, 294 N.C. 242, 250, 239 S.E. 2d 835, 841 (1978).

In the case before us, we find that there is simply no evidence to warrant an instruction on voluntary manslaughter. Voluntary manslaughter is defined as unlawful killing of a human being without malice, in the heat of passion as a result of legally sufficient provocation. G.S. 14-18. *State v. Wilkerson*, 295 N.C. 559, 579, 247 S.E. 2d 905, 916 (1978). Therefore, to warrant an instruction on voluntary manslaughter, there must be evidence that

the killing occurred while the defendant was in heat of passion caused by legally sufficient provocation.

Here, defendant Upright presented no evidence to show either adequate provocation or an action taken in heat of passion. To the contrary, defendant Upright claimed that he did not do the killing. The only inference of provocation is that Brooks grabbed defendant Upright's gun and used it to beat another patron of The Rail. There is no evidence that Brooks assaulted or threatened to assault defendant Upright. Brooks' assault on another patron, unknown to defendant Upright, is not legally sufficient provocation warranting an instruction on voluntary manslaughter. This assignment of error is without merit.

[6] Defendant Upright assigns error to the failure of the trial court to give full instructions regarding second degree murder. He contends that the court failed to inform the jury that "if they had any reasonable doubt as to any one or more elements of the offense . . ., they should return a verdict of not guilty."

When read contextually, as required, the trial judge's instructions sufficiently emphasized that proof beyond a reasonable doubt, of the existence of the essential elements of second degree murder and that defendant Upright was the perpetrator, was necessary to sustain a finding of defendant Upright's guilt. The phrase "[i]f the killing was unlawful and was done with malice, then the defendant would be guilty of second degree murder" clearly relates to the preceding clause and other portions of the jury charge regarding the standard of proof necessary for a conviction. We note, parenthetically, that defendant Upright failed to properly preserve for appeal error as to the instructions. Rule 10(b)(2), Appellate Rules of Procedure. However, the Court has reviewed the jury charge in its entirety and finds no prejudicial error. Accordingly, we hold that this assignment of error is without merit.

[7] Finally, defendant Upright contends that the trial court erred in sentencing him to a term in excess of the presumptive term. Defendant contends that the trial court's finding of a single factor in aggravation does not justify the substantial increase in the sentencing. We do not agree.

The sentencing guidelines fixed in the Fair Sentencing Act are clear. A presumptive sentence of fifteen years applies to a conviction of second degree murder. G.S. 15A-1340.4(f)(1). A sentence greater than the presumptive term may be imposed when there is a preponderance of the evidence which supports the finding of one or more aggravating factors. G.S. 15A-1340.4(b). Specifically, a finding of a single factor in aggravation supported by a preponderance of evidence is sufficient to support a sentence greater than the presumptive term. *State v. Baucom*, 66 N.C. App. 298, 302, 311 S.E. 2d 73 (1984). The weight attached to a particular aggravating or mitigating circumstance in a case is within the discretion of the trial judge. *State v. Salters*, 65 N.C. App. 31, 37, 308 S.E. 2d 512, 516 (1983). *State v. Davis*, 58 N.C. App. 330, 293 S.E. 2d 658, 661, *disc. rev. denied*, 306 N.C. 745, 295 S.E. 2d 482 (1982).

In this case, the trial judge found as an aggravating factor that defendant Upright had a prior conviction or convictions for criminal offenses punishable by more than sixty days confinement at which time he was represented by counsel. Since the sentence imposed was within the statutory maximum, the court judgment in sentencing will not be disturbed on appeal. As there was no abuse of the trial court's discretion, we find no merit to this assignment of error.

## B.   Defendant Russell's Appeal

Defendant Russell challenges the sufficiency of the evidence to go to the jury. He contends first that the evidence was insufficient to establish that defendant Upright killed Brooks, and therefore he could not have been an accessory after the fact. For the reasons stated in our consideration of defendant Upright's assignments of error challenging the sufficiency of the evidence, which we need not reiterate here, we summarily reject this contention.

[8]   Defendant Russell next contends that the evidence was insufficient to show that the murder was complete at the time he allegedly left the scene. In a prosecution for accessory after the fact under G.S. 14-7, the State need only show that the defendant knew: (1) that a felony had been committed; (2) that the principal had committed it; and (3) that the defendant rendered assistance to the principal personally. *State v. Earnhardt, supra* at 68, 296

S.E. 2d at 653. *State v. Squire*, 292 N.C. 494, 505, 234 S.E. 2d 563, 569, *cert. denied*, 434 U.S. 998, 98 S.Ct. 638, 54 L.Ed. 2d 493 (1977).

A review of the evidence in this case tended to show that after the shooting of Brooks, defendant Russell aided defendant Upright by disposing of the murder weapon. The evidence also showed that before defendant Russell left the scene, he knew that Brooks had been shot and killed. Indeed, there was eyewitness testimony that defendant Russell and defendant Upright rolled Brooks over and searched his pockets. Viewed in the light most favorable to the State, the evidence clearly indicated that defendant Russell saw the shooting, the person who did it, and the seriousness of Brooks' wound before rendering assistance to defendant Upright by disposing of the murder weapon. While it is possible that defendant Russell did not know Brooks was dead at the time he left the scene, the totality of the evidence permits an inference that defendant Russell knew a felony had been committed before he rendered assistance to the felon. Accordingly, we find no merit in this assignment of error.

### C.  Defendant Fink's Appeal

**[9]**  Defendant Fink also assigns error to the failure of the trial court to grant his motion to sever his trial from that of co-defendants Upright and Russell. He contends that separate trials were necessary to promote a fair determination of his guilt or innocence since he and defendant Upright presented antagonistic defenses at trial. We do not agree.

Our review of the record indicates that all defendants pleaded not guilty and the State's evidence as to the offenses charged was consistent and free from material conflicts. The critical question in determining whether antagonistic defenses warrant severance is "whether the conflict in defendants' respective positions at trial is of such a nature that considering all of the other evidence in the case, defendants were denied a fair trial." *State v. Nelson*, 298 N.C. 573, 587, 260 S.E. 2d 629, 640 (1979), *cert. denied*, 446 U.S. 929, 100 S.Ct. 1867, 64 L.Ed. 2d 282 (1980). *State v. Boykin*, 307 N.C. 87, 91, 296 S.E. 2d 258, 260 (1982). Defendant Upright's defense was that a scuffle occurred and Brooks was killed by an unknown person. Defendant Fink's defense was that Brooks was not shot at The Rail. We find no prejudice to defendant Fink in joinder because there was no material conflict in the

defenses which would prevent the jury from reaching a fair determination of his guilt or innocence. Finally, we do not see how defendant Upright's decision to testify placed defendant Fink in an untenable position. Defendant Upright's testimony in no way implicated defendant Fink. We hold that defendant Fink's motion to sever the trials was properly denied. Defendant Fink's assignments of error one and two are, therefore, without merit.

[10]   Defendant Fink next contends that he was denied due process by the failure of the prosecutor to dismiss the murder indictment against him while simultaneously proceeding to trial on the charge of accessory after the fact to second degree murder. More specifically, he contends that the failure to dismiss the murder indictment chilled his constitutional right to testify and impeded the preparation of his defense. We summarily reject these contentions. Where a defendant is charged in separate bills of indictment with mutually exclusive offenses growing out of the same transactions or occurrences, the State may proceed to trial on either indictment without dismissing the other.

[11]   In his next assignment of error, defendant Fink contends that the trial court erred in denying his motions to dismiss. He contends that there was insufficient evidence that defendant Fink personally assisted the principal in escaping detection, arrest, or punishment.

Viewed in the light most favorable to the State, there was substantial evidence that defendant Fink assisted defendant Upright in avoiding detection and arrest. There was competent evidence that after the killing, defendant Fink grabbed two shotguns from behind the bar. He gave one to the man guarding the door, and he kept one. Defendant Fink then told everyone to line up against the wall, and he told them that if they were contacted by the police, they should tell the police "that [Brooks] walked in off the street and fell in the floor shot." There was also eyewitness testimony that defendant Fink held a gun on the crowd while defendant Upright took the name and address of each patron. In light of all of this, we are of the opinion that the court correctly denied defendant Fink's motions to dismiss. This assignment of error is without merit.

[12]   By assignment of errors six and seven, defendant Fink contends that the court erred in imposing a sentence in excess of the

presumptive term since the aggravating factors did not outweigh the mitigating factors. He contends that the trial court should have found as a mitigating factor that "[he] was suffering from a mental or physical condition insufficient to constitute a defense but significantly reduced his culpability for the offense." G.S. 15A-1340.4(a)(2)(d). He argues that the evidence that he had been drinking on the morning of the shooting should have been considered in mitigation. We do not agree.

The trial court found as a factor in aggravation that defendant Fink had a prior conviction for criminal offenses punishable by more than sixty days confinement. The trial court found no factors in mitigation. A defendant has the burden of establishing such factors by a preponderance of the evidence. G.S. 15A-1340.4 (b). *State v. Jones*, 309 N.C. 214, 219, 306 S.E. 2d 451, 455 (1983). *State v. Hinnant*, 65 N.C. App. 130, 133, 308 S.E. 2d 732, 734 (1983). Evidence that defendant Fink had been drinking, without more, does not show that he was in such a state of inebriation so as to impair his ability to understand the consequences of his conduct. Accordingly, we hold that the trial judge acted properly in refusing to find as factor in mitigation that defendant Fink had been drinking. Defendant Fink's contentions are, therefore, without merit.

For the reasons stated in the consolidated trials of defendants, we find

No error.

Judges BRASWELL and EAGLES concur.